**Carl M. PESTA & Penny M. Pesta, his wife, Plaintiffs,**

v.

**CBS, INC., a corporation, Ed Bradley, Morley Safer, Mike Wallace, Harry Reasoner, Monika Jensen, John Doe, Mary Roe, and Storer Communications, Inc., a corporation, jointly & severally, Defendants.**

No. 84–5124.

United States District Court, E.D. Michigan, S.D.

June 7, 1988.

## MEMORANDUM OPINION

RALPH M. FREEMAN, District Judge.

This litigation arises out of an allegedly defamatory broadcast of a segment of the CBS program, "60 Minutes," entitled "Tragic Assumptions." The background facts are largely undisputed and were summarized in a prior opinion of this court as follows:

*Background Facts*

In late December, 1972, sixteen-year-old John Haisenleder became ill with the flu. Because of the severity of his symptoms, John's mother contacted their family doctor. The family doctor suspected that John was suffering from Reye's Syndrome, the symptoms of which include vomiting, disorientation, and combative, or even violent, behavior. The family doctor instructed Mrs. Haisenleder to take her son to St. John's Hospital, where he would meet them.

Mrs. Haisenleder called the St. Clair Shores police for assistance. When they arrived, the police officers suspected that John was on drugs. Despite Mrs. Haisenleder's pleas to take her son to St. John's Hospital where the family doctor was waiting, the police officers insisted on taking John to Harrison Hospital which handled drug cases. The doctors at Harrison Hospital, including Plaintiff,[1] could not diagnose John's illness. John died on January 2, 1973, purportedly of Reye's Syndrome.

CBS reported the story of John's death on the October 30, 1983 broadcast of "60 Minutes." Defendant Bradley introduced the segment as "a story about what happened when two policemen made a tragic assumption about what was wrong with a young man they were called to help during a medical emergency, and about what happened when a doctor in an emergency room went along with what turned out to be a misdiagnosis." (Transcript of 60 MINUTES, Vol. XVI, No. 7, Sunday, Oct. 30, 1983 [hereinafter "Transcript"], p. 11) Two statements made during the course of

Balfour Peisner, Southfield, Mich., for plaintiffs.

Richard E. Rassel, Butzel, Long, Gust, Klein & Van Zile, Detroit, Mich., for defendants.

---

1. Unless otherwise stated, the Court will refer to Carl M. Pesta as "Plaintiff" and Penny M. Pesta, who asserts a derivative claim for loss of consortium, by name.

that broadcast are at issue in this case. The first statement at issue was made by Dr. Thomas Shope, who opined that the doctors at Harrison Hospital made a "critical mistake" by failing to order liver function studies on John. (Transcript, pp. 15–16) The second statement at issue was made by Defendant Bradley, indicating that John had an 80–90% chance of recovery when he was first brought to Harrison Hospital. (Transcript, p. 13) Plaintiff alleges that these statements, which he claims were false, injured him both monetarily and professionally. (*Pesta v. CBS, Inc.*, 653 F.Supp. 350 (E.D.Mich.1986) (footnote added)).

On November 24, 1986, this Court granted summary judgment in favor of Defendants. The Court reasoned that the allegedly defamatory report related to the quality of health care services is recognized as a matter of legitimate public concern and therefore, the Defendants had a qualified privilege to publish the statements at issue in this case. The Court further stated that the existence of Defendants' qualified privilege to publish the statements at issue required Plaintiff to bear the burden of proving by clear and convincing evidence that Defendants acted with actual malice in publishing the allegedly defamatory statements. The Court found that Plaintiff produced no affirmative proof of actual malice and granted Defendants' summary judgment motion. Plaintiff appealed this decision.

Shortly after the opinion was issued, the Michigan Supreme Court changed the standards by which a court should evaluate allegedly defamatory statements regarding matters of public concern. See *Rouch v. Enquirer & News of Battle Creek*, 427 Mich. 157, 398 N.W.2d 245 (1986). In *Rouch*, the Michigan Supreme Court held that private plaintiffs who choose to bring defamation actions on the basis of reports which are a matter of public concern, must prove that the alleged defamation was false and must prove that defendants were negligent in reporting the statements. The holding of the *Rouch* court did not affect the standard to be applied to public figure plaintiffs. Even after *Rouch*, a public fig-

ure plaintiff is required to prove falsity and actual malice in publishing statements. *Rouch* only effected a change in the law with respect to private plaintiffs. As already stated, private plaintiffs need only show that, with respect to matters of public concern, a defendant falsely published defamatory statements and was negligent in such publication.

On appeal the Sixth Circuit vacated the judgment of this Court and remanded for reconsideration in light of *Rouch*. The Sixth Circuit expressed no opinion as to the final outcome of the case. The matter is presently before the Court at the directive of the Sixth Circuit to reconsider this Court's prior decision granting summary judgment in favor of Defendants. The parties submitted supplemental briefs to assist the court.

In his brief, Plaintiff argues that he is a private plaintiff and has raised material issues of fact with respect to Defendants' negligence in publishing the statements at issue. Defendants' contend that Plaintiff is not a private plaintiff but is a limited purpose public figure and therefore, the "actual malice" standard applies. Defendants do not contest Plaintiff's assertion that there are no material factual issues regarding their alleged negligence. Defendants only dispute Plaintiff's contention that Plaintiff is a private person and not a limited purpose public figure. This Court has not yet ruled on whether Plaintiff is a public or private figure since such a distinction was not made in pre-*Rouch* Michigan law when matters of public concern were involved. This Court has already determined that this litigation involves matters of public concern. Thus this Court must next determine whether Plaintiff is a public or private figure plaintiff. If Plaintiff is a public figure plaintiff, then this Court's previous ruling regarding Plaintiff's failure to show actual malice would still stand. If Plaintiff is a private figure plaintiff, then this Court would have to re-evaluate the evidence submitted in support of and in opposition to the motion for summary judgment in order to determine if there are material factual issues with respect to De-

fendants' negligence in publishing the statements at issue.

Generally, the issue of whether a particular person is a private or public figure is an issue of law for the court to decide. See, *Brewer v. Memphis Pub. Co., Inc.*, 626 F.2d 1238, 1247, n. 13 (5th Cir.1980); *Holt v. Cox Enterprises*, 590 F.Supp. 408 (N.D. Ga.1984); See also, *Rosenblatt v. Baer*, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966). "Summary judgment on this issue is appropriate if ... there exists no dispute as to the facts relevant to the plaintiff's status as a public or private figure." *Holt v. Cox Enterprises*, 590 F.Supp. 408, 411 (1984) (citing *Rosanova v. Playboy Enterprises, Inc.*, 580 F.2d 859, 861–62 (5th Cir.1978)). In this case, the underlying facts relevant to a characterization of Plaintiff's status are largely undisputed. However, the parties dispute the effect that the underlying facts have on the issue of the status of the plaintiff. Defendants contend, essentially, that because of Plaintiff's involvement in the treatment of John Haisenleder, and his subsequent voluntary submission to an interview on 60 Minutes, Plaintiff is a limited purpose public figure. Plaintiff, on the other hand, contends that neither the interview nor his involvement with the teenager's treatment make Plaintiff a limited purpose public figure.

The Supreme Court case of *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) is the leading case discussing the term, "public figure."

> The term "public figure" as defined in *Gertz* encompasses two classes of persons. The first class consists of "[those who] occupy positions of such pervasive power that they are deemed public figures for all purposes." Id. at 345 [94 S.Ct. at 3009]. In order for a person to be classed as a public figure for all purposes, there must be "clear evidence of general fame or notoriety in the community and pervasive involvement in the affairs of society." Id. at 352 [94 S.Ct. at 3013]. The court in *Gertz* recognized a second class of public figures consisting of those persons who "have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." Id. at 345 [94 S.Ct. at 3009]. Such persons are held to be limited public figures with respect to publications concerning the particular controversy.

*Schultz v. Reader's Digest Ass'n*, 468 F.Supp. 551, 555 (E.D.Mich.1979) (J. Freeman). In order to establish that Plaintiff is a limited purpose public figure, Defendants must show that Plaintiff has:

(1) successfully invited public attention to his views in an effort to influence others *prior to the incident that is the subject of litigation;*

(2) voluntarily injected himself into a public controversy related to the subject of the litigation;

(3) *assumed a position of prominence in the public controversy;* and

(4) maintained regular and continuing access to the media.

*Lerman v. Flynt Distributing Co., Inc.*, 745 F.2d 123, 136–37 (2nd Cir.1984) (emphasis added).

■ The Court considers it necessary to clarify two terms used in the above test for determining whether a plaintiff is a limited purpose public figure. First, the court identifies the "public controversy" in this case as the dispute arising from the alleged medical mistreatment or misdiagnosis of the condition of John Haisenleder. Second, the court considers the "incident that is the subject of litigation" to be the interview of Plaintiff conducted by Defendants. With these definitions in mind, the court can apply the standard for a limited purpose public figure to the facts of this case.

■ The facts indicate that Plaintiff did not invite "public attention to his views in an effort to influence others" prior to his interview on 60 Minutes. Plaintiff was only a physician with some involvement in the treatment of John Haisenleder. Plaintiff was not involved in the subsequent lawsuit initiated by John's mother nor is there any evidence that Plaintiff voiced his opinion through the media or otherwise in a public manner in an effort to influence public opinion about the treatment of John. There is no evidence that Plaintiff assumed

a position of prominence in publicity surrounding the alleged medical mistreatment of John. It is evident that Plaintiff was a private person at the time of his treatment of John. The mere fact that Plaintiff submitted to an interview relating to the subject matter of the public controversy several years after the occurrence of the controversy does not indicate that Plaintiff assumed a position of prominence in the public controversy itself. Furthermore, the fact that Plaintiff submitted to the interview does not require the conclusion that he "voluntarily injected himself into a public controversy related to the subject of the litigation." Defendants cannot invite a private person to submit to a public interview in an attempt to make that person a public figure so that Defendants may be afforded the greater protection of the actual malice standard. See *Hutchinson v. Proxmire*, 443 U.S. 111, 135, 99 S.Ct. 2675, 2688, 61 L.Ed.2d 411 (1979) ("Clearly, those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure.") See also, *Wolston v. Reader's Digest Assn., Inc.*, 443 U.S. 157, 99 S.Ct. 2701, 61 L.Ed.2d 450 (1979). Finally, the facts indicate that Plaintiff did not maintain "regular and continuing access to the media." Plaintiff only submitted to a single isolated interview several years after the peak of the public controversy. There is no evidence of any media contact in the intervening years. In conclusion, Defendants can not show that Plaintiff has satisfied the criteria set forth in *Lerman v. Flynt Distributing Co., Inc.*, 745 F.2d at 136–37, and therefore, Plaintiff is not a limited purpose public figure.

■ Having concluded in this opinion that Plaintiff is a private person and having concluded in a prior opinion dated November 24, 1986 that the subject matter of the public controversy was a matter of public concern, according to the standard enunciated in *Rouch*, 427 Mich. 157, 398 N.W.2d 245 (1986), Plaintiff need only establish that Defendants falsely published

defamatory statements and were negligent in such publication. While Defendants' prior motion for summary judgment established an absence of evidence supporting Plaintiff's claims of actual malice, it is completely lacking in references to evidence which would clearly establish that Plaintiff cannot prove the essential elements of his claim of negligence. Defendants' supplemental brief also does not address the standards of summary judgment with respect to Plaintiff's claim of negligence. Apparently, Defendants concede that there are genuine issues of material facts regarding the falsity of the statements and the negligence in publication of the statements. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986) (The party moving for summary judgment bears the burden of pointing out that "there is an absence of evidence to support the nonmoving party's case.") Defendants have not sustained their burden of pointing out an absence of evidence supporting an essential element of Plaintiff's claim of negligence. Accordingly, Defendants' motion for summary judgment is denied.[2]

Plaintiff has also filed with this court a motion to amend his complaint. Plaintiff seeks to amend his complaint by adding newly discovered facts. Defendants oppose the motion to amend by stating that the motion is belated, based on misstatement, would lead to additional discovery and would be prejudicial to Defendants. Defendants contend that Plaintiff knew of the additional facts prior to the close of discovery and should have amended the complaint at that time. Defendants do not explain why the addition of new facts in the complaint would necessitate further discovery nor do they explain how they would be prejudiced by the amendment.

■ Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires." The decision to grant or

2. Denial of Defendants' motion for summary judgment has no effect on Penny M. Pesta's derivative claim for loss of consortium. Her

claim is still viable since her husband's claim was not disposed of on the motion for summary judgment.

deny a motion to amend is within the sound discretion of the district court judge. *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). The Court is of the opinion that leave to amend, by adding the new facts discovered by Plaintiff as described in his brief in support of this motion, should be permitted. Leave to amend may be denied where more than two and one-half years had elapsed since the filing of the complaint and the plaintiff sought leave to amend by adding a new theory of recovery. See, *Troxel Manufacturing Co. v. Schwinn Bicycle Co.*, 489 F.2d 968 (6th Cir.1973). However, Plaintiff herein is not seeking to add a new theory of recovery but is only seeking to add new facts learned through discovery. Under such circumstances, even after a considerable lapse of time, including an appeal, reversal and remand, leave to amend may be granted. See *Western Urn Mfg. Co. v. American Pipe & Steel Corp.*, 308 F.2d 333 (D.C. Cir.1962). Accordingly, Plaintiff's motion for leave to amend his complaint is granted.

Finally, Plaintiff requests this Court to impose sanctions upon Defendants for their alleged failure to disclose to this Court the change in the law rendered by the *Rouch* decision. The record is clear that this Court rendered its opinion granting summary judgment in favor of Defendants on November 24, 1986, prior to the decision rendered in *Rouch* on December 26, 1986. Therefore, Defendants were not under an obligation to disclose to this court a decision of the Michigan Supreme Court that had not yet been rendered. Accordingly, Plaintiff's request for sanctions is denied.

For the reasons set forth above, Defendants' motion for summary judgment is DENIED and Plaintiff's motion to amend the complaint is GRANTED but Plaintiff's request for sanctions is DENIED. Plaintiff shall submit an appropriate order approved as to form by Defendants.